IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER MILTON NELSON,

                      Plaintiff,                      OPINION & ORDER

v.

                                                    13-cv-513-jdp

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                      Defendant.

---

      Plaintiff Christopher Milton Nelson seeks judicial review of a final decision of the Commissioner of Social Security finding him not disabled within the meaning of the Social Security Act. Plaintiff asserts that remand is warranted because the Administrative Law Judge (ALJ) erred by: (1) failing to give a complete and full evaluation of whether Nelson met Listing 1.04; and (2) improperly analyzing, and ultimately rejecting, a work assessment from UW-Stout, contrary to SSR 06-3p. The court concludes that the ALJ properly evaluated the Stout assessment, but because she erred in failing to fully analyze whether Nelson met Listing 1.04, the court will reverse and remand.

BACKGROUND

**A. Procedural Background**

      Plaintiff was born on May 3, 1971, and suffers from severe back pain, dating back to the 1980s. He graduated from high school and worked as an inventory clerk, a roofing supervisor, a sales representative, a forklift operator, a property manager, and a furniture assembler, among other short-term jobs. Since his disability onset date on August 28, 2006, Nelson has tried to work, but with little success. On July 10, 2009, plaintiff was in an alcohol-related car accident and broke his wrist. As a result of the accident, he lost his driver's license, but attended a class

and took both a written and road test to earn it back over the next year. Nelson claims that the car accident caused additional impairments, from which he continues to suffer.

On February 14, 2007, plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[1] Following his 2009 car accident, plaintiff revised his application and now claims a disability for the closed period of August 28, 2006, through June 6, 2008, and an ongoing period of disability beginning July 10, 2009. In his application, plaintiff claimed that he suffered from lower back pain, right shoulder separation, right elbow crack, high blood pressure, and arthritis in the lower back.

The Social Security Administration denied his application initially and again on reconsideration. R. 115-18.[2] Plaintiff requested a hearing and appeared before ALJ Gail Reich on October 28, 2009, with counsel. Also present at the hearing were Michael A. Lace, PsyD, Thomas Maxwell, MD, and Gregory S. Jones, a vocational expert (VE). Following the hearing, on January 21, 2010, plaintiff received an unfavorable decision from the ALJ, finding that plaintiff was not disabled during the applicable period. R. 122-30.

Plaintiff appealed the decision to the Appeals Council, which remanded the case to obtain additional evidence concerning plaintiff's back condition and depression, consider his obesity, evaluate his residual functional capacity (RFC), and obtain testimony from a VE. R. 135-38. On remand, ALJ Teresa Hoskins Hart held a hearing, at which plaintiff was present and represented by counsel. R. 69-114. VE Karl Botterbusch was also present and testified. On March 26, 2012, the ALJ issued a decision finding that plaintiff was not disabled. R. 142-53. Plaintiff again appealed the decision to the Appeals Council, which denied review on May 29,

---

[1] Plaintiff also applied for the same programs in July 2000, and March 2005, but was denied.

[2] The record citations are to the Administrative Record, Dkt. 11.

2013, making the ALJ's decision the final determination of the Commissioner. On July 22, 2013, plaintiff timely sought judicial review in this court under 42 U.S.C. § 405(g).

**B.  Relevant Medical Evidence**

Plaintiff claims that he was disabled between August 28, 2006, and June 6, 2008, and from July 10, 2009, forward. September 30, 2012, was his date last insured and the deadline before which he must establish his disability for the purpose of obtaining disability insurance benefits. That deadline does not apply to his application for supplemental security income. *Liskowitz v. Astrue*, 559 F.3d 736, 740 n.2 (7th Cir. 2009). His complaints include pain in his lower back that travels down his legs; pain in his wrist, knees, and foot; hands that shake; headaches; body aches; depression; and memory and concentration problems. He is also obese.

Plaintiff began having back problems as a teenager and worked with different doctors and pain clinics over the years. In 2000, he underwent a microsurgical discectomy at L3-L4. R. 385. In 2006, diagnostic studies revealed degeneration of his invertebral disc, some facet hypertrophy, and mild anterior spondylolisthesis, but no spinal stenosis. R. 363, 411. He regularly took painkillers and received injections to help manage his pain, but these efforts were not always successful and he often remained in pain. To make himself more comfortable, plaintiff takes breaks and lies down frequently. Plaintiff also suffers from depression, which is related to his physical impairments. R. 508, 510, 683-87, 693-95.

On July 10, 2009, plaintiff was admitted to the hospital following an alcohol-related car accident. He fractured his distal radius and scaphoid, and doctors suspected he suffered a possible head injury. In the hospital, he was intubated and received an initial critical care course. R. 622-58.

**C. The Administrative Hearing and Decision**

On February 23, 2012, the ALJ held a video hearing and took testimony from plaintiff and the VE. R. 68-114. The ALJ asked plaintiff about his work history, daily activities, and medical conditions. Plaintiff testified that his back pain was so debilitating that even short activities caused him soreness and he had to take regular breaks to lie down. He also testified that he suffered from depression and has had memory issues since his 2009 car accident.

The ALJ asked the VE hypothetical questions regarding a worker with plaintiff's vocational profile who could perform various levels of exertional work with additional physical and environmental restrictions. The VE testified that someone with the limitations would not be able to perform plaintiff's past work, but that there were still jobs in the economy that someone with plaintiff's limitations would be able to perform. The VE suggested telemarketer and order clerk.

The ALJ issued a written decision on March 26, 2012, analyzing each of the five steps of the regulatory sequential analysis and concluding that plaintiff was not disabled. R. 142-53. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his onset date. R. 144. At step two, she determined that plaintiff suffered from the following severe impairments: lumbar degenerative disc disease with chronic low back pain; right shoulder pain; bilateral hand pain; morbid obesity; and depression. R. 145. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, and specifically in Listing 1.04A, regarding disorders of the spine. Although she found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ discounted plaintiff's claims regarding the intensity, persistence, and limiting effects of his symptoms "to the extent they [were] inconsistent with" the RFC that she found. R. 147. She found that

plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasionally lifting or carrying 10 pounds; occasionally lifting or carrying up to 20 pounds; occasionally pushing or pulling, crawling, balancing, and climbing stairs or ramps; never climbing ladders, ropes, or scaffolds; never stooping, kneeling, crouching; or reaching overhead with the right upper extremity. He can perform all other reaching functions, as well handling and fingering, frequently. He can never work at unprotected heights, and can tolerate occasional exposure to extreme heat, moving mechanical machinery, and operating a motor vehicle. He is limited to frequent exposure to extreme cold, humidity and wetness, vibrations, fumes, dusts, gases, odors, poor ventilation, and loud noise. Additionally, he has mild limitations in understanding and remembering simple instructions; moderate limitations in carrying out simple instructions and making judgments on simple work-related decisions; moderate limitations in understanding and remembering complex instructions; marked limitations in carrying out complex instructions and making judgments on complex work-related decisions; moderate limitations in interacting with the public, supervisors, or coworkers, and in responding appropriately to routine changes in the work setting. Mild limitation is defined as a slight limitation in an area, but he can generally function well. Moderate limitation is defined as more than a slight limitation in an area, but he is still able to function satisfactorily. Marked limitation is defined as a serious limitation with substantial loss of ability to effectively function in an area.

R. 146-47. At steps four and five of her analysis, the ALJ found that plaintiff could not perform his past relevant work, but could perform a significant number of other jobs in the national economy.

OPINION

A federal court reviews a final decision by the Commissioner of Social Security, deferring to the Commissioner's findings of fact as "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ.

*Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, a reviewing "court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff contends that the ALJ erred by: (1) failing to give a complete and full evaluation of whether Nelson met Listing 1.04; and (2) improperly analyzing, and ultimately rejecting, the Stout assessment, contrary to SSR 06-3p. After reviewing the record in this case, the court concludes that the ALJ did err by failing to fully analyze whether Nelson met Listing 1.04, but did not err in giving the Stout assessment little weight in her analysis.

**A. The ALJ did not properly analyze Nelson's lumbar spine issues under Listing 1.04.**

The Listing of Impairments describes certain impairments, which, if met, create a presumption of disability. *Maggard v. Apfel*, 167 F.3d 376, 379-80 (7th Cir. 1999); 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. It is the plaintiff's burden to prove that he meets or medically equals a listed impairment. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Here, the ALJ found that although plaintiff had severe impairments in his lumbar spine with degenerative disc disease, his condition did not meet or medically equal Listing 1.04. Plaintiff argues that this was error.

Listing 1.04 identifies disorders of the spine, including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture. The disorder must result in compromise of a nerve root or the spinal cord.

Listing 1.04 further requires evidence of:

1. Nerve root compression, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

2. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

3. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

According to the ALJ, to meet or medically equal Listing 1.04A, plaintiff needed to show evidence of motor loss accompanied by sensory or reflex loss. The ALJ found no such loss.

In her analysis, the ALJ failed to analyze any of plaintiff's medical records in light of the specific requirements of the Listing. Instead, using boilerplate language, the ALJ cited a lack of findings or studies that would support plaintiff's assertion of listing-level severity. She added that plaintiff "has no motor loss, atrophy or other findings contemplated by [the] listed impairments." R. 145. The Seventh Circuit has expressed suspicion at a "perfunctory analysis" at this step and suggested that, in some cases, a lack of analysis thwarts meaningful review and may require remand. *Ribaudo*, 458 F.3d at 583 (collecting cases). By failing to discuss the medical evidence in light of the Listing's analytical framework, the ALJ prevents the court from determining whether she considered that evidence properly. *See Scott v. Barnhart*, 297 F.3d 589, 594 (7th Cir. 2002) (stating that the court has "repeatedly admonished ALJs to sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and . . . to enable us to trace the path of [their] reasoning.") (internal quotations omitted). Additionally, despite finding plaintiff morbidly obese, the ALJ failed to mention plaintiff's obesity and its potentially exacerbating effect on his physical condition, as she was

7

required to do by Listing 100Q and directly instructed to do by the Appeals Council.

By contrast, the ALJ conducted a more thorough listing analysis in discussing the plaintiff's mental impairments, breaking down each criterion of paragraph B of Listing 12.04 and citing specific and concrete evidence from plaintiff's medical records and testimony to support her conclusion. This part of the ALJ's opinion builds a "logical bridge" from the plaintiff's evidence to the ALJ's conclusions, as required by the applicable Social Security regulations. Had the ALJ undertaken the same level of analysis for plaintiff's physical impairments, the court would be more inclined to affirm her decision. Instead, the sparse analysis and omission mandate remand.

In executing step three of the regulatory analysis, the ALJ had ample evidence from which to draw. The plaintiff highlights evidence in his brief for the ALJ to consider, including several reports, assessments, and notes from multiple doctors over years of impairment within the relevant time period. Dkt. 17, at 22-24. On remand, the ALJ should use this evidence from plaintiff's medical record to analyze the criteria of Listing 1.04 and build a logical bridge to her conclusion as to whether plaintiff meets or medically equals the Listing.

B. **The ALJ properly analyzed the vocational assessment of the Stout Vocational Rehabilitation Institute Services.**

For several days in October 2010, plaintiff was assessed by the Stout Vocational Rehabilitation Institute Services. R. 327-31. As described by the VE, the Stout assessment was a five-day physical and mental evaluation that lasted about six hours per day. R. 110-11. The purpose of the assessment was to determine how plaintiff performed simulated work activities over the week. The VE also distinguished the assessment from other functional capacity tests, which contain standardized measurements.

The assessment indicated that plaintiff faced obstacles in obtaining work and recommended that he continue to seek Social Security benefits. More specifically, it limited plaintiff to sitting or standing for no longer than 10 consecutive minutes. The assessment also stated that he required breaks of 15 to 40 minutes between every three to five minutes spent working. The VE testified that a person with the limitations described in the assessment would not be able to perform any jobs in the economy. R. 111-12.

The ALJ found that the Stout assessment was not an acceptable source for the purpose for which it was presented and gave this assessment little weight. R. 151. Plaintiff contends that the ALJ failed to comply with SSR 06-3p because, in deciding to accord the assessment little weight, she failed to explicitly consider the factors in 20 C.F.R. § 404.1527(d) and § 416.927(d). Plaintiff argues that this too was error.

Under SSR 06-3p, the factors in 20 C.F.R. § 404.1527(d) and § 416.927(d) apply not only to "acceptable medical sources," but also to "other sources," as defined in 20 C.F.R. § 404.1513(d) and § 416.913(d). The factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

Importantly, SSR 06-3p also notes that "[i]nformation from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose."

In her written opinion, the ALJ adequately explained why she gave the Stout assessment "little weight." First, the assessment was unclear about which types of jobs plaintiff was attempting during the evaluations, which would presumably inform its potential relevance as

9

evidence. Second, the pain behavior noted in the assessment was inconsistent with that observed by plaintiff's treating doctor and by an internal medicine consultative examiner. Third, the assessment did not contain standardized measurements as are typically contained in functional evaluations. In articulating these reasons, the ALJ demonstrated her consideration of the factors for a non-medically acceptable source.

Plaintiff objects to the ALJ's given reasons as lacking specificity and being contrary to logic. The ALJ's reasons are specific enough to determine the assessment's limited informational value. The ALJ seems to have applied the factors of 06-3p, thereby supporting her determination to accord the assessment only little weight. Although the court affirms the ALJ's decision on this point, on remand the ALJ is encouraged to more explicitly articulate the application of these factors to make it abundantly clear that she considered them.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Christopher Milton Nelson's application for disability insurance benefits and supplemental social security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 17th day of September, 2014.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge